IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CIELO JEAN GIBSON, et al.,

      Plaintiffs,

v.                                                    CASE NO. 1:18-cv-138-AW-GRJ

COWBOYS SALOON GAINESVILLE,
LLC d/b/a COWBOYS SALOON, et al.,

      Defendants.

_____/

## **REPORT AND RECOMMENDATION**

Pending before the Court is Plaintiffs' Amended[1] Motion for Default

Judgment pursuant to Federal Rule of Civil Procedure 55.  ECF No. 16.

Plaintiffs allege that Defendants misappropriated their images, likenesses,

and identities for use in promotional materials.  Notwithstanding proper

service of the Complaint and notice of subsequent proceedings,

Defendants have elected not to participate in this case, and a Clerk's

default was entered.  ECF Nos. 10, 11; *see also* ECF No. 21.

On June 7, 2019, the district judge entered an order concluding that

Plaintiffs have sufficiently pleaded their claims but an evidentiary hearing

---

[1] In view of Plaintiffs' amended motion, their initial Motion for Default Judgment, ECF No.
13, should be **TERMINATED**.

was necessary for Plaintiffs to establish the Court's personal jurisdiction over Defendants and to calculate the appropriate damages (if any).  ECF No. 14.  The district judge then referred this matter to the undersigned for an evidentiary hearing and to issue a report and recommendation on Plaintiffs' motion.  ECF No. 20.  The undersigned conducted an evidentiary hearing on November 13, 2019.  ECF Nos. 21, 22.  Plaintiffs have also filed a supplemental declaration in support of their Amended Motion for Default Judgment.  ECF No. 23.

The instant motion is thus ripe for consideration.  For the reasons explained below, it is respectfully **RECOMMENDED** that Plaintiffs' motion should be **GRANTED IN PART**.

## I.  BACKGROUND

Each Plaintiff "is a professional model who earns a living by promoting her image and likeness to select clients, commercial brands, media and entertainment outlets, as well as relying on her reputation and own brand for modeling, acting, hosting, and other opportunities."  ECF No. 1 at 8.  Moreover, they "seek[] to control the use and dissemination of [their] image[s] and, thus, actively participate[] in vetting and selecting modeling, acting, brand spokesperson, or hosting engagements."  *Id.* at 9.  By way of introduction:

- Plaintiff Cielo Jean Gibson has been featured in various fitness and motor sports magazines, namely *Import Tuner*, *FHM*, *American Curves*, *MuscleMag International*, and *Muscle & Fitness*. Gibson has appeared in advertisements for Patrón Tequila and Bowflex. At the time of the evidentiary hearing, Gibson was a model for the Falken Drift Team and Top Rank Boxing, and she maintained an Instagram account with about 60,000 followers.

- Plaintiff Dessie Mitcheson was previously featured in *Maxim*. Mitcheson was the main "ring girl" at the boxing match between Floyd Mayweather and Manny Pacquiao in 2015, known as the "Fight of the Century." Mitcheson has appeared in advertisements for Crest toothpaste and Doritos tortilla chips and, in 2018, was a contestant on *The Amazing Race*, a network reality show. Mitcheson maintains an active social media presence, including an Instagram account with more than 200,000 followers.

- Plaintiff Alyssa Nobriga is a psychotherapist with a Master's degree in Clinical Psychology, a faculty member at the University of Santa Monica (in California), and a professional coach for individuals and corporations. Nobriga is the spokesperson for her counseling company, and her image is featured on the company's website. Nobriga has contributed articles to numerous publications, including *HuffPost*.

- Plaintiff Jessica Hinton has been a model for more than 10 years, beginning at age 14. Hinton began her career starring in three national television commercials and appearing on network television shows *Baywatch* and *7th Heaven*. In 2010, Hinton was the face of an advertising campaign for the Palms Casino Resort in Las Vegas, and, in 2011, she was featured as a *Playboy* "Playmate of the Month." More recently, Hinton has been featured as a cover model for fitness and athletics magazines, including *FHM*, *MMA Sports*, and *Muscle & Fitness*. Hinton maintains an active social media presence with more than 4 million followers.

- Plaintiff Brooke Johnson (a/k/a Brooke Taylor) is known for her appearances in *FHM* and *Maxim* as well as her work with Dreamgirl International and Frederick's of Hollywood.  Johnson has appeared in national and international campaigns for Coors Brewing Company, Anheuser-Busch, Playboy, Oliver Peoples, Bacardi, and the Coca-Cola Company. Johnson has retired from modeling.

- Plaintiff Sarah Stage is a model and brand ambassador.  Stage has worked with Frederick's of Hollywood, Jafra Cosmetics, Buffalo Jeans, Sky Clothing, and Beach Bunny Swimwear, and she has been featured in commercials for Kia, Anheuser-Busch, and Samsung.  Stage is also an actress, having appeared in *CSI: Crime Scene Investigation* and in the music video for the song "Your Decision" by Alice in Chains.  Stage has also appeared in magazines, including *Cosmopolitan*, *Shape*, and *Playboy*.  Stage has contracted with brands for paid social media posts on Instagram, Twitter, and Facebook, each of which she sold for about $15,000 in 2016.  Stage's popularity grew further during her pregnancy in 2017.

- Plaintiff Ursula Mayes began her modeling career with *Maxim*. She then appeared on television shows *Deal or No Deal*, *Minute to Win It*, *The Tonight Show with Jay Leno*, and *The Jay Leno Show*.  Mayes has modeled in campaigns for Coronet Diamonds, Vokswagen, Subaru, Bacardi, Jim Beam, *Cosmopolitan*, *Vogue*, *In Style*, and *Marie Claire*.  Mayes was recently featured on the cover of a video game (Juiced 2: Hot Import Nights) and starred in the network television commercial for the game.

- Plaintiff Sara Underwood is a model, actress, television personality, and spokeswoman.  Underwood began her career with appearances in *Playboy* as Playmate of the Month in July 2006, Playmate of the Year in 2007, and in *Playboy* videos.  Underwood has since appeared as herself in feature films and on reality television.  Underwood is now a sought-after model for brand endorsements on her widely popular social media accounts.  Underwood has 9 million followers on Instagram, 5

million followers on Facebook, and 626,000 followers on Twitter.

- Plaintiff Rachel Bernstein Koren has modeled for Mercedes-Benz Fashion Week Miami and travel television shows. Koren has been featured in campaigns for major brands, including Nike, Reebok, Axe Body Sprays, True Religion, Ed Hardy, Jessica Simpson Swimwear, and Tommy Bahama. Koren is an owner and spokesperson for Cashmere Hair, a company Koren pitched on the network television show *Shark Tank*. Koren also appeared in a national campaign for Midori, which was featured in print and on billboards.

ECF Nos. 1, 16-7, 16-8.

Defendants are nightclubs in Gainesville, Arizona, and Colorado that are now permanently closed. Defendant Cowboys Saloon Gainesville, LLC, was known as "Cowboys Saloon" and operated at 201 W. University Ave. in Gainesville, Fla. ECF No. 1 at 4. Defendant Cowboys Saloon Stapleton, LLC, was also known as "Cowboys Saloon" and operated at 8320 Northfield Boulevard in Denver, Colo. *Id.* at 5–6. Finally, Defendant Cowboys Saloon High Street, LLC, was known as "Cowboys Saloon" and operated at 5310 East High Street, Building A3 in Phoenix, Ariz. *Id.* at 6–7. Each Defendant utilized a website, as well as Facebook and Instagram accounts, to promote its events and drink specials.

Plaintiffs' claims arise from Defendants' promotional materials for events and specials at Defendants' businesses. Defendants used Plaintiffs' images, likenesses, and identities to advertise their nightclubs

without the professional engagement and compensation standard in the modeling industry.  ECF No. 1.  For example, Defendant Cowboys Gainesville used an image of Plaintiff Underwood to promote a "Race the Clock" drink special for various named liquor brands (Jose Cuervo, Bacardi, Smirnoff, Jack Daniels, and Captain Morgan) without (1) consulting Plaintiff Underwood so she, or her appropriate representative, could decide whether to accept the opportunity, and (2) payment to Plaintiff Underwood for using her image and influence.  ECF No. 1-8.

Plaintiffs allege that "Defendants' conduct creates the false and misleading appearance and impression that each Plaintiff either works for one or more Defendants, has appeared and participated or will appear and participate in activities or events at Cowboys, and/or has agreed and consented to advertise, promote, market or endorse Cowboys or one or more Cowboys' events or activities." *Id.* at 10.  This is problematic, Plaintiffs contend, because the valuation of a model's services is based on the product, service, or other venture a model chooses to promote. *Id.* at 9–10.

Plaintiffs each raise the same five claims against Defendants: false advertising and false endorsement under the Lanham Act, 15 U.S.C. § 1125(a); unauthorized misappropriation of name and likeness, Fla. Stat. §

540.08; violation of the common-law right of publicity; and conversion.

Defendant Cowboys Gainesville was served with the Complaint on August

21, 2018, through its registered agent in Plantation, Fla.  ECF Nos. 8, 23-2.

Defendants Cowboys Stapleton and Cowboys High Street were served with

the Complaint on September 6, 2018, in Fort Lauderdale, Fla., through a

member of the limited liability companies, Anthony Perera.  ECF Nos. 7, 9,

23-3, 23-4.[2]

Plaintiffs request in the instant motion that the Court (1) enter default

judgment against Defendants; (2) award Plaintiffs damages totaling

$265,000; (3) award Plaintiffs their attorney's fees (in the amount of

$28,270.00) and costs (in the amount of $2,453.59); and (4) enter an order

pursuant to Federal Rule of Civil Procedure 69 requiring Defendants to

complete Florida Rules of Civil Procedure Form 1.977 Fact Information

Sheet, and all necessary attachments, within 45 days from the date of

judgment.

## II.  LEGAL STANDARD FOR DEFAULT JUDGMENT

Rule 55 authorizes the Court to enter a default judgment against a

party who has failed to plead in response to a complaint.  Fed. R. Civ. P.

---

[2] Counsel for Plaintiffs stated at the evidentiary hearing on the instant motion that Perera was the chief executive officer and managing member for all three Defendants, and he ran the businesses from Florida.

55(b).  "Entry of default judgment is only warranted when there 'is a sufficient basis in the pleadings for the judgment entered.'"  *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (*quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) [3]).

Although a defaulted defendant is deemed to have admitted well-pleaded allegations of fact as to liability, the Court must determine the "amount and character of damages to be awarded."  *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999); *see also Ensley v. Gene's Wrecker Service, Inc.*, No. 3:16-cv-713-MCR-CJK, 2019 WL 339630, at *1 (N.D. Fla. Jan. 27, 2019) ("[E]ven in the context of a default judgment, a court has an obligation to assure that there is a legitimate basis for any damage award it enters.").  The plaintiff has the burden of proving entitlement to and the amount of damages.  *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008).

The Court may take into account affidavits and such other evidence as it deems necessary.  Fed R. Civ. P. 55(a).  Further, "The [C]ourt may conduct hearings or make referrals … when to enter or effectuate

---

[3] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (holding decisions of the former Fifth Circuit that were issued prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit).

judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

The Court also has the affirmative duty to determine whether a defaulted defendant is subject to the Court's personal jurisdiction before entering a default judgment.  *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010); *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001); *In re Tuli*, 172 F.3d 707, 712 (9th Cir.1999); *Williams v. Life Sav. and Loan,* 802 F.2d 1200, 1203 (10th Cir.1986); *In re Rivas*, 377 B.R. 423, 426 (S.D. Fla. Bankr. 2007).  This is because lack of personal jurisdiction voids a judgment.  *Juris v. Inamed Corp.*, 685 F.3d 1294, 1335 (11th Cir. 2012).

### III.  PERSONAL JURISDICTION

In determining whether the Court has personal jurisdiction over a defendant, it generally employs a two-part analysis*.  Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626–27 (11th Cir. 1996).  First, the Court must determine if jurisdiction can be obtained under Florida's long-arm statute (Fla. Stat. § 48.193).  *Id.* at 627.  Florida's long-arm statute provides for two types of personal jurisdiction: (1) "specific jurisdiction" is available when a party's contacts with the forum relate to the cause of action; and (2)

"general jurisdiction" is available when a party's contacts are unrelated to the litigation but nonetheless are "continuous and systematic," such as owning property, running a business, or maintaining a bank account. Fla. Stat. § 48.193.

The Court must then decide whether the defendant has "sufficient minimum contacts" with Florida to satisfy the constitutional requirements under the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Sculptchair*, 94 F.3d at 630–31. Even if jurisdiction is found under Florida's long-arm statute, a separate review of the facts must be undertaken by the Court to determine if the constitutional test is met. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 856 (11th Cir. 1990) (citing *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 500 (Fla. 1989)).

Here, the Court need not engage in this typical analysis because more traditional jurisdictional principles establish Defendants are subject to the Court's authority. First, this Court has personal jurisdiction over Defendants because they were properly served in Florida. "[J]urisdiction based on physical presence alone constitutes due process because it is one of the continuing traditions of our legal system that define the due

10

process standard of traditional notions of fair play and substantial justice."
*Burnham v. Superior Court of Cal., Cty. of Marin*, 495 U.S. 604, 619 (1990);
*see also Pennoyer v. Neff*, 95 U.S. 714, 724 (1877) ("Where a party is
within a territory, he may justly be subjected to its process, and bound
personally by the judgment pronounced on such process against him.").
Florida has adopted the principle of so-called "tag" or "transient"
jurisdiction. *See, e.g.*, *Durkee v. Durkee*, 906 So. 2d 1176, 1177 (Fla. 4th
DCA 2005) (collecting cases); *see also Xena Invs., Ltd. V. Magnum Fund
Mgmt. Ltd.*, 726 F.3d 1278, 1284 (11th Cir. 2013). Accordingly, the
undersigned concludes the Court has personal jurisdiction over all
Defendants and entering judgment against them, if warranted, would not
offend the Constitution.

Alternatively, the evidence presented at the November 13, 2019,
hearing demonstrates Defendants are citizens of Florida. Defendants are
limited liability companies, not corporations.[4] It is well-established that "a

---

[4] In Florida, Colorado, and Arizona, a limited liability company is an unincorporated
business association distinct from a corporation. *Butler Law Firm, PLC v. Higgins*, 410
P.3d 1223, 1228–29 (Ariz. 2018); *Weinstein v. Colborne Foodbotics, LLC*, 302 P.3d 263,
266 (Colo. 2013); *Skylake Ins. Agency, Inc. v. NMB Plaza, LLC*, 23 So. 3d 175, 177 (Fla.
3d DCA 2009). Plaintiffs' allegations regarding Defendants' principal places of business
or states of organization are irrelevant. *See Hukic v. Aurora Loan Servs.*, 588 F.3d 420,
427 (7th Cir. 2009); *Buschman v. Anesthesia Bus. Consultants LLC*, 42 F. Supp. 3d 1244,
1248 (N.D. Cal. 2014). *Trowbridge v. Dimitri's 50's Diner, L.L.C.*, 208 F. Supp. 2d 908,
910 (N.D. Ill. 2002).

limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004); *see also Organizacion Miss Am. Latina, Inc. v. Urquidi*, 712 F. App'x 945, 948 (11th Cir. 2017).

The undersigned surmises from the public records of the Florida Secretary of State, Arizona Corporation Commission, and Colorado Secretary of State presented at the evidentiary hearing that Anthony Perera is either a direct member of Defendants' organizations or a member of Cowboys Saloon Holdings, LLC, which itself is a member of at least one of Defendant's organizations.  Cowboys Saloon Holdings, LLC, maintains a business address on Pine Island Road in Plantation, Fla.—where Plaintiffs served Cowboys Gainesville in this case—and, as explained above, Perera was served on behalf of Cowboys Stapleton and Cowboys High Street at a residential address in nearby Fort Lauderdale, Fla.  Perera appears to be a citizen of Florida.  The totality of the circumstances therefore establish this Court is an appropriate forum for suit against all three Defendants because they are domiciled in Florida.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (describing a defendant's domicile as the "paradigm forum" for the exercise of personal jurisdiction); *United States v. Hodges*, 256 F.

App'x 313, 314 (11th Cir. 2007) (rejecting the argument that a federal district court in Georgia did not have jurisdiction over a defendant who admitted he was a "citizen of Georgia and is domiciled in Georgia").

## IV.  DAMAGES

Turning to Plaintiffs' requested relief, they argue they are entitled to an award of their actual damages under the Lanham Act.  ECF No. 16-1 at 4, 8–9.[5]  Plaintiffs rely on the expert testimony of Stephen Chamberlin, a model and talent agent with more than 30 years of experience in the modeling industry, to calculate the "fair market value" of the images Defendants misappropriated.  *Id.* at 4; *see also* ECF Nos. 7, 8.  In totum, Plaintiffs request the Court award them $265,000 in actual damages.  ECF No. 16-1 at 4–7.

### A.    Recovery under the Lanham Act

Section 1117(a) of the Lanham Act provides a plaintiff who successfully prosecutes a false advertising or endorsement claim under § 1125(a) with an array of potential relief:

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, *a violation under section 1125(a)* or (d) of this title, or a willful violation under section

---

[5] Plaintiffs also request that "a default judgment be awarded in their favor under their Florida and common law claims" but do not propose the Court award any damages for those claims.  The Court will therefore focus on the Plaintiffs' proposed damages under the Lanham Act.

1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a) (emphasis added).

The Court has "[g]reat latitude" in awarding damages. *Drake v. E. I. DuPont deNemours & Co., Inc.*, 432 F.2d 276, 279 (5th Cir. 1970). This is especially true under § 1117(a) of the Lanham Act, which "vests considerable discretion in the district court." *Burger King Corp. v. Mason*, 710 F.2d 1480, 1495 (11th Cir. 1983); *see also Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1157 (7th Cir. 1994) (holding the district may "award up to three times the damages plaintiff can actually prove").

"Moreover, Lanham Act damages may be awarded even when they are not susceptible to precise calculations[.]" *Ramada Inns, Inc. v.*

*Gadsden Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1986); *see also PODS*

*Enters., LLC v. U-Haul Int'l, Inc.*, 126 F. Supp. 3d 1263, 1282 (M.D. Fla.

2015).  This is because a "wrongdoer may not complain of inexactness

where his actions preclude precise computation of the extent of the injury."

*Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 698 (5th Cir. 1975)

(citing *Eastman Kodak Co. v. Southern Photo Co.*, 274 U.S. 359, 379

(1927)).[6]

### B.   Stephen Chamberlin's Methodology and Calculations

Mr. Chamberlin is the current owner and director of Rumblestrom

Management, "a worldwide model sourcing and management company."

ECF No. 16-7 at 4.  His "key functions" at Rumblestorm are "to quote,

negotiate[,] and oversee rates, work[,] and career development for all

talent" represented by Michele Pommier Models and Rumblestorm.  *Id.*  Mr.

Chamberlin has represented more than 5,000 models, negotiated more

---

[6] *See also J. Truett Payne Co., Inc. v. Chrysler Motors Corp.*, 451 U.S. 557, 566–67 (1981) (accepting a degree of uncertainty in the calculation of business damages because "it does not come with very good grace for the wrongdoer to insist upon specific and certain proof of the injury which it has itself inflicted"); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931) ("Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts.  In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.").

than 10,000 contracts, day rates, and usages, and has overseen the billing of more than $100 million over his 30-year career. *Id.* Mr. Chamberlin was previously an Agency Director at LA Models Management, which he describes as "one of the world's largest and most respected talent agencies." *Id.* Mr. Chamberlin has represented or otherwise worked with numerous celebrities, namely Brooke Shields, Eva Longoria, Claudia Schiffer, Tyra Banks, Ali Larter, Jessica Biel, Elizabeth Berkeley, Liv Tyler, Julianna Margulies, Alessandra Ambrosio, and Paris Hilton. *Id.* His client associations include Conde Nast Worldwide, Nordstrom, Chanel, Tom Ford, and Revlon. *Id.*

Mr. Chamberlin was retained "to evaluate and value the compensation [Plaintiffs] would have and should have received for the use of" their misappropriated images in Defendants' promotional materials. ECF No. 16-8 at 2. Mr. Chamberlin proposes that each Plaintiff's actual damages is the "fair market value" for the use of each image, "taking into account [each Plaintiff's] payment history, work quality, experience, exposure and duration of career[.]" *Id.* at 5; *see also id.* at 12 ("If a User opts not to engage in arms-length negotiation for the image and, instead, uses the Model's image without consent, an assessment of financial damages to the model must include at a minimum, the fair market value for

the image had it been negotiated properly.").  Mr. Chamberlin also relies on

a number of factors typically considered in an arms-length negotiation of a

model's engagement and compensation, including:

(a) a model's desirability, based on numerous factors, including the demand for her services;

(b) a model's work history, such as prior associations, appearances, endorsements, or advertisements;

(c) the nature of the business seeking a model's service, the type of product, whether exclusivity is sought, the embarrassment factor from being associated with the advertisement or marketing of certain products, or similar considerations;

(d) the history of the business seeking a model's services, the style, quality and production of previous advertising and promotions, and its hiring of other models and celebrities;

(e) exposure, namely how broadly the model's likeness will be circulated;

(f) the type of exposure, or the "usage" of the image, such as advertising, social media, third party promotion, branding, coupon, extra usage, or corporate identity; and

(g) the length of exposure of usage, the period of use, and any renewals or rollovers.

*Id.* at 4–5.  At bottom, Mr. Chamberlin "attempt[ed] to recreate a negotiation

process that did not occur."  ECF No. 16-7 at 5.

To calculate Plaintiffs' damages, Mr. Chamberlin reviewed

Defendants' promotional materials, spoke with Plaintiffs (and any available

agents or managers), researched Plaintiffs' professional backgrounds, and

reviewed any obtainable supporting documentation that evidenced

Plaintiffs' prior modeling compensation, such as contracts and earnings

statements.  ECF No. 16-7.  Mr. Chamberlin then established separate

rates of compensation for the use of each Plaintiff's image in an

advertisement ("Advertising"), the advertisement's distribution on

Defendants' social media ("Social Media"), and any association with a third-

party brand ("Third-Party").  Mr. Chamberlin's calculations of Plaintiffs'

damages are summarized as follows:

| Plaintiff | Image | Defendant | Rates | Damages |
|-----------|-------|-----------|-------|---------|
| **Gibson** | ECF No. 1-1 at 2 | Cowboys Gainesville | Advertising - $5,000<br>Social Media - $5,000<br>Third-Party - $5,000 | $15,000 |
| | ECF No. 1-1 at 4 | Cowboys High Street | Advertising - $5,000<br>Social Media - $5,000 | $10,000 |
| | ECF No. 1-1 at 5 | Cowboys High Street | Advertising - $5,000<br>Social Media - $5,000 | $10,000 |
| | | | **TOTAL DAMAGES** | **$35,000** |
| **Mitcheson** | ECF No. 1-2 at 2 | Cowboys Gainesville | Advertising - $5,000<br>Social Media - $5,000 | $10,000 |
| | ECF No. 1-2 at 3 | Cowboys Stapleton | Advertising - $5,000<br>Social Media - $5,000<br>Third-Party - $5,000 | $15,000 |

| | ECF No. 1-2 at 4 | Cowboys Stapleton | Advertising - $5,000 Social Media - $5,000 Third-Party - $5,000 | $15,000 |
|---|---|---|---|---|
| | ECF No. 1-2 at 7 | Cowboys High Street | Advertising - $5,000 Social Media - $5,000 Third-Party - $5,000 | $15,000 |
| | | | **TOTAL DAMAGES** | **$55,000** |
| **Nobriga** | ECF No. 1-3 at 2 | Cowboys Gainesville | Advertising - $2,500 Social Media - $2,500 Third-Party - $2,500 | $7,500 |
| | | | **TOTAL DAMAGES** | **$7,500** |
| **Hinton** | ECF No. 1-4 at 2 | Cowboys Stapleton | Advertising - $10,000 Social Media - $10,000 | $20,000 |
| | ECF No. 1-4 at 3 | Cowboys High Street | Advertising - $10,000 Social Media - $10,000 | $20,000 |
| | | | **TOTAL DAMAGES** | **$40,000** |
| **Johnson** | ECF No. 1-5 at 2 | Cowboys Stapleton | Advertising - $5,000 Social Media - $5,000 Third-Party - $2,500 | $15,000 |
| | | | **TOTAL DAMAGES** | **$15,000** |
| **Stage** | ECF No. 1-6 at 2 | Cowboys Gainesville | Advertising - $7,500 Social Media - $7,500 | $15,000 |
| | | | **TOTAL DAMAGES** | **$15,000** |
| **Mayes** | ECF No. 1-7 at 2 | Cowboys Gainesville | Advertising - $5,000 Social Media - $5,000 Third-Party - $5,000 | $15,000 |

| | | | TOTAL DAMAGES | $15,000 |
|---|---|---|---|---|
| **Underwood** | ECF No. 1-8 at 2 | Cowboys Gainesville | Advertising - $20,000 Social Media - $20,000 Third-Party - $20,000 | $60,000 |
| | | | TOTAL DAMAGES | $60,000 |
| **Koren** | ECF No. 1-9 at 2 | Cowboys Gainesville | Advertising - $7,500 Social Media - $7,500 Third-Party - $7,500 | $22,500 |
| | | | TOTAL DAMAGES | $22,500 |

## C.  Award of Plaintiffs' Damages

In view of Mr. Chamberlin's written submissions and his testimony at the November 13, 2019, evidentiary hearing, the undersigned concludes that Plaintiffs are entitled to the requested $265,000 as actual damages under the Lanham Act.  As the district judge mentioned in the June 7, 2019, order, "this case is not exactly unique."  ECF No. 14 at 5.  Other courts addressing similar misappropriation claims, by some of the same plaintiffs, have found Mr. Chamberlin's "fair market value" determination to be an adequate method of calculating damages for a defendant's unauthorized use of the identity or persona of a plaintiff as a human being, not a copyrighted image.  *See Moreland v. A-Q-B, LLC*, No. 6-19-CV-372-ADA, 2019 WL 6727870, at *3 (W.D. Tex. Dec. 11, 2019); *Taylor v. Trapeze Mgmt., LLC*, No. 0:17-cv-62262-KMM, 2019 WL 1977514, at **4–5 (S.D.

Fla. Feb. 28, 2019); *Edmondson v. Velvet Lifestyles, LLC*, No. 15-24442-CIV-MARTINEZ/LOUIS, 2018 WL 6807342, at *4 (S.D. Fla. Sept. 24, 2018), *report and recommendation adopted*, 2018 WL 6807314, at *1 (Oct. 29, 2018); *Edmondson v. Caliente Resorts, LLC*, No. 8:15-cv-2672-T-23TBM, 2017 WL 10591833, at *5 (M.D. Fla. Aug. 31, 2017); *see also Bogart, LLC v. Ashley Furniture Indus., Inc.*, No. 3:10-cv-39 (CDL), 2012 WL 3745833, at **16–17 (M.D. Ga. Aug. 28, 2012) (crediting an expert's calculation of damages from the misappropriation of a celebrity's publicity rights—the "Bogart" mark—based on a "hypothetical licensing negotiation"). This case offers no exception or distinction.

Accordingly, the undersigned recommends that Plaintiffs are entitled to default judgment against Defendants for $265,000 as compensatory damages in the respective amounts assigned to each plaintiff in the chart above.

## V.  ATTORNEY'S FEES AND COSTS

Plaintiffs next request their attorney's fees and costs totaling $28,270.00 and $2,453.59, respectively.  The undersigned will address each request in turn.

First, Plaintiffs' request for attorney's fees is governed by the Lanham Act, which provides for such an award to the prevailing party only in

"exceptional" cases.  15 U.S.C. § 1117(a).  The Eleventh Circuit previously

defined an "exceptional" case as one in which the "the infringing party acts

in a malicious, fraudulent, deliberate, or willful manner."  *Planetary Motion,*

*Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1205 (11th Cir. 2001).  In 2014,

however, the Supreme Court interpreted the term "exceptional" in a similar

provision of the Patent Act (35 U.S.C. § 285) and held it should be

construed in accordance with its ordinary meaning:

> We hold … that an "exceptional" case is simply one that stands
> out from others with respect to the substantive strength of a
> party's litigating position (considering both the governing law and
> the facts of the case) or the unreasonable manner in which the
> case was litigated.

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554

(2014).  The Eleventh Circuit subsequently abrogated its past precedent

and applied the *Octane Fitness* definition of "exceptional" to the Lanham

Act.  *Tobinick v. Novella*, 884 F.3d 1110, 1117–18 (11th Cir. 2018).

Therefore, the prevailing standard for attorney's fees under § 1117(a) is

whether "'a case stands out from others,' either based on the strength of

the litigating positions or the manner in which the case was litigated."  *Id.* at

1118 (quoting *Octane Fitness*, 572 U.S. at 554).

Plaintiffs do not present any factual or legal basis for *entitlement* to

attorney's fees beyond merely repeating the language of § 1117(a).  That

is, they offer several pages of arguments as to the *amount* of attorney's

fees the Court should award but do not argue this case satisfies the

modern definition of "exceptional" to warrant such an award.  ECF No. 16-1

at 7–12; ECF No. 23 at 6–10.  Plaintiffs notably did not offer any additional

argument on this issue at the evidentiary hearing.

After careful consideration of this case's limited procedural history

and Plaintiffs' relatively straightforward claims, the undersigned has not

identified any factors that distinguish this case from the average Lanham

Act case with respect to the parties' litigating positions.[7]  Plaintiffs' request

for attorney's fees under the Lanham Act should be **DENIED**.

Turning to costs, Plaintiffs are entitled to recover "costs of the action"

as the prevailing party.  15 U.S.C. § 1117(a); Fed. R. Civ. P. 54(d).  Section

1920 limits what may be taxed as costs to include: (1) fees of the Clerk and

United States Marshal; (2) fees for printed or electronically recorded

---

[7] The fact that this case comes before the Court in a default posture does not itself make the case exceptional.  *See Hunter Residential Servs., LLC v. AAA Randpro Plumbing, Inc.*, No. 8:16-cv-1311-CEH-TGW, 2017 WL 1987247, at *6 (M.D. Fla. Feb. 21, 2017) ("A failure to respond does not make the case exceptional, otherwise every default case would warrant attorney's fees, which is not supported by the statute."); *BMW of N. Am., LLC v. Cuhadar*, No. 6:14-cv-40-Orl-37DAB, 2014 WL 5420133, at *4 (M.D. Fla. July 10, 2014) ("[T]he Court concludes that making a conscious choice to default is not enough to take this case out of the run of the mill category.  The only acts shown to have been committed by these Defendants were the display of the BMW logo, the failure to respond to demand letters, and the failure to respond to the lawsuit.  For this, they lost the case. While this makes BMW the prevailing party, the statutory language requires more than merely prevailing. Otherwise, every default case would warrant fees; a conclusion not justified by the statute.").

transcripts necessarily obtained for use in the case; (3) witness and printing fees; (4) copying costs for materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation for court-appointed experts, interpreters, and the salaries, fees, expenses and costs of special interpretation services under 28 U.S.C. § 1828.  28 U.S.C. § 1920.  The Court cannot award costs "in excess of those permitted by Congress under 28 U.S.C. § 1920."  *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002).

Plaintiffs filed a bill of costs with their supplemental declaration that includes a $400 filing fee, $1,302.50 for the service of summons and subpoenas, $142.16 for copying costs, and $608.93 for the appearance of witnesses, the last of which Plaintiffs itemize as the attendance fee, subsistence, and mileage for Mr. Chamberlin's appearance at the evidentiary hearing.  ECF No. 23-8.  Plaintiffs have also submitted documentation in support of the service and copying costs they incurred in this case.  *Id.*  The Court may award these costs under § 1920, and therefore Plaintiffs' request for an award in the amount of $2,453.59 should be **GRANTED**.

## VI.  POST-JUDGMENT COLLECTION

Finally, Plaintiffs request the Court enter an order requiring Defendants to complete Florida Rules of Civil Procedure Form 1.977 Fact Information Sheet, and all necessary attachments, within 45 days from the date of judgment.  Under the Florida Rules of Civil Procedure, a judgment creditor may obtain discovery to aid her execution of a judgment.  Fla. R. Civ. P. 1.560(a).  Upon request of the judgment creditor, the Court "shall order the judgment debtor or debtors to complete [F]orm 1.977, including all required attachments, within 45 days of the order[.]"  Fla. R. Civ. P. 1.560(b).

Importantly, the Florida Rules of Civil Procedure are made applicable here by Federal Rule of Civil Procedure 69, which allows a judgment creditor to "obtain discovery from any person—including the judgment debtor—as provided in [the Federal Rules of Civil Procedure] or by the procedure of the state where the court is located."  Fed. R. Civ. P. 69(a)(2). Rule 69 effectively gives the judgment creditor "the choice of federal or state discovery procedures to conduct post-judgment discovery."  *In re Clerici*, 481 F.3d 1324, 1337 (11th Cir. 2007).  Plaintiffs are therefore entitled to the post-judgment discovery it seeks, and such an order may be incorporated into the final judgment.  *Weatherby Locums, Inc. v. Lower*

25

*Bucks Pediatrics, P.C.*, No. 19-cv-62478-BLOOM/Valle, 2019 WL 6468714,

at *2 (S.D. Fla. Dec. 2, 2019); *Microsoft Corp. v. Tech Emporium Enters.,*

*Inc.*, No. 1:17-cv-141-MW-GRJ, 2018 WL 6137199, at **3–4 (N.D. Fla. Jan.

16, 2018); *Am. Home Assurance Co. v. Weaver Aggregate Transp., Inc.*,

298 F.R.D. 692, 693 (M.D. Fla. 2014).

Defendants should be ordered to complete the Florida Rules of Civil

Procedure Form 1.977 Fact Information Sheet, and all necessary

attachments, and return a sworn copy to Plaintiffs' counsel within 45 days

from the date of judgment.

## VII.  CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that:

1.    Plaintiffs' Motion for Default Judgment, ECF No. 13, should be **TERMINATED**.

2.    Plaintiffs' Amended Motion for Default Judgment, ECF No. 16, should be **GRANTED IN PART**.

3.    The **Clerk** should be **DIRECTED** to enter a final default judgment  for statutory damages under the Lanham Act in favor of each of the plaintiffs and against each defendant in the amounts set forth in the chart on pp. 18-19 of the report and recommendation plus costs in the amount of $2,453.59.

4.    Plaintiffs' request for an award of attorney's fees under the Lanham Act, 15 U.S.C. § 1125(a), should be **DENIED**.

5.    Defendants should be **ORDERED** to complete the Florida Rules of Civil Procedure Form 1.977 Fact Information Sheet, and all necessary attachments, and return a sworn copy to Plaintiffs' counsel (Ludmila Khomiak, The Casas Law Firm PC, 80 SW 8th Street, Suite 2000, Miami, Fla., 33130) **within forty-five (45) days from the date of the final judgment**.

**IN CHAMBERS** this 5th day of February 2020.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**